## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

**FILED**

MAR 1 5 2013

Phil Lombardi, Clerk
**U.S. DISTRICT COURT**

TRAVELERS CASUALTY AND SURETY  )
COMPANY OF AMERICA,            )
                               )
    Plaintiff,                 )
                               )
v.                             )   Case No.
                               )
SAMSON INVESTMENT COMPANY      )  **13 CV  156 GKF - FHM**
                               )
    Defendant.                 )
                               )
                               )
                               )

## VERIFIED COMPLAINT & APPLICATION FOR INJUNCTIVE RELIEF

Plaintiff, Travelers Casualty and Surety Company of America, files its Verified Complaint & Application for Injunctive Relief against Defendant, Samson Investment Company, and respectfully states:

### PARTIES

1.    Travelers Casualty and Surety Company of America ("Travelers") is a Connecticut corporation maintaining its principal place of business at One Tower Square, Hartford, Connecticut 06183.

2.    Samson Investment Company ("Samson Investment") is a Nevada corporation maintaining its principal place of business at Samson Plaza, Two West Second Street, Tulsa, Oklahoma 74103.

### JURISDICTION AND VENUE

3.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1332(a)(l)-(a)(2) as there is complete diversity of citizenship between the parties and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

4.    Venue is proper in this District pursuant to 28 U.S. C. § 1391.

**VERIFIED COMPLAINT & APPLICATION FOR INJUNCTIVE RELIEF**    Pa
11723.0288

**EXHIBIT**

**6**

## NATURE OF THE CASE

5.    At the request of Samson Investment, Travelers, as surety, and Samson Investment, as principal, issued over 100 bonds in favor of various obligees on projects throughout the United States.  The bonded obligations of Travelers—owed to a variety of governmental entities—include reclamation, payment of taxes, and compliance with environmental laws and regulations.  Of these bonds, Samson Investment has failed to discharge Travelers from the following:

| Bond # | Limit | Obligee Name |
|---|---|---|
| 10811343 | $100,000.00 | Board of Oil and Gas Conservation State of Montana |
| 40039526 | $25,000.00 | Oklahoma Secretary of State |
| 40044583 | $10,000.00 | Dept. of Wildlife Conservation |
| 100182922 | $1,295,828.00 | Oklahoma Tax Commission, Director of the Taxpayer Assistance Division |
| 100725202 | $50,000.00 | City of Union City |
| 100739385 | $150,000.00 | United States  Department of the Interior |
| 100799478 | $10,000.00 | Wyoming Department of Employment, Workers' Safety and Compensation Division |
| 100821117 | $30,000.00 | Freestone County Courthouse |
| 100844034 | $150,000.00 | U.S.A. Department of the Interior |
| 100860422 | $10,000.00 | Lamar County Commission |
| 100917217 | $10,000.00 | State of Wyoming |
| 100918816 | $10,000.00 | State of Wyoming |
| 100923196 | $310,000.00 | Railroad Commission of Texas |
| 100923200 | $25,000.00 | Michigan Dept of Natural Resources-Geological Survey Div |
| 100923210 | $2,500.00 | New Mexico State of the Land Office |
| 100953089 | $4,000.00 | State of Michigan |
| 103122245 | $22,000.00 | Pearl River Valley Electric Power Associates |
| 103270776 | $100,000.00 | Arkansas Oil & Gas Commission |
| 103737661 | $50,000.00 | City of Longview-Engineering Dept. |
| 103737665 | $10,000.00 | Tulsa District- Corps Of Engineers |
| 103737666 | $25,000.00 | Bryan County Courthouse |
| 104104182 | $10,000.00 | State of Oklahoma |
| 104104190 | $25,000.00 | State of Colorado, State Board of Land Comm. |
| 104434498 | $500,000.00 | U.S. Environmental Protection Agency |
| 104434501 | $175,000.00 | County of Laplata, Colorado |
| 104651090 | $7,500.00 | County Judge |
| 104651091 | $20,000.00 | Mississippi State Oil & Gas Board |
| 104651092 | $20,000.00 | Michigan Department of Natural Resources |
| 104651095 | $100,000.00 | Forcap Investments |
| 104651104 | $15,000.00 | State of Utah-Dept. of Natural Resources |

| Bond # | Limit | Obligee Name |
|---|---|---|
| 104948562 | $45,000.00 | Kansas Corporation Commission - Conservation Division |
| 104948564 | $25,000.00 | Sebastian County, Arkansas |
| 104948569 | $50,000.00 | Michigan Department of Natural Resources |
| 104948570 | $25,000.00 | County Judge - Navarro County Courthouse |
| 105130434 | $25,000.00 | Commonwealth of Pennsylvania-Department of Environmental Protection |
| 105244239 | $128,700.00 | State of Maryland - Administrator of Garrett County |
| 105422838 | $500,000.00 | Maryland Department of the Environment - Land Management Administration |
| 105646435 | $15,000.00 | Wyoming Office of State Lands And Investments |
| 105683396 | $50,000.00 | State of Wyoming Oil & Gas Conservation Commission |
| 105683402 | $50,000.00 | State of Wyoming - Office of State Lands and Investments |
| 105742104 | $50,000.00 | State of Wyoming - Office of State Lands and Investments |
| 105742106 | $150,000.00 | Office of the State Tax Commissioner |
| 105742107 | $245,000.00 | Bureau of Land Management - Rawlins Field Office |
| 105774228 | $50,000.00 | State of Wyoming - Office of State Land and Investments |
| 105774234 | $50,000.00 | State of Wyoming - Office of State Lands & Investments |
| 105839011 | $10,000.00 | Commonwealth of Pennsylvania, Department of Transportation |
| **Aggregate Penal Limit** | **$4,740,528.00** | |

6.     As set forth above, the face amount of undischarged or potential liability of Travelers under the Bonds is $4,740,528.

7.     In consideration for and specifically to induce Travelers to furnish the Bonds, Samson Investment executed an Indemnity Agreement in favor of Travelers on February 19, 2009 (the "Indemnity Agreement.")  A true and correct copy of the Indemnity Agreement is attached at Exhibit "1".

8.     Under the Indemnity Agreement, Samson Investment agreed, among other things, that:

> 5.(a)    Indemnitor shall, within thirty (30) days of receipt of Company's written demand ("Discharge Demand"), procure the full and complete discharge of the Company from any and all Bond(s) by providing competent written evidence of discharge satisfactory to Company, in its sole discretion.  If Indemnitors fail to provide the aforementioned discharge[,] Indemnitors shall, within an additional seven (7) days, provide Company with an irrevocable letter of credit in form, content and by a bank acceptable to the Company.  The letter of credit shall be in an amount equal to the

total of all undischarged liability under said Bond(s), which liability shall be determined at the time of the Company's Discharge Demand. Collateral or letters of credit previously provided to Company may be utilized to establish compliance with this provision. If the undischarged liability subsequently increases, then it is the Indemnitors' responsibility to ensure continued compliance with this provision at all times.

(b) Indemnitors waive, to the fullest extent permitted by law, each and every right they may have to contest this requirement. Indemnitors stipulate and agree that Company will not have an adequate remedy at law should Indemnitors fail to post said letter of credit and further agree as a result that Company is entitled to specific performance of this provision…

. . .

9. If Company has or obtains collateral or letters of credit, Company shall not have any obligation to release collateral or letters of credit or turn over the proceeds thereof until it shall have received a written release in form and substance satisfactory to Company with respect to each and every Bond. Any collateral or letters of credit provided to Company by any Indemnitor or any third party, or the proceeds thereof, may be applied to any Loss.

9. This dispute involves unconditional rights of Travelers and specific obligations of Samson Investment upon demand, to procure the full and complete discharge of Travelers under its surety bonds and/or to provide collateral in the full and total amount of all undischarged or potential liability and loss of Travelers in connection with the Bonds pursuant to the terms of the Indemnity Agreement. Travelers opted to exercise its unconditional rights under paragraph 5 after the credit rating of Samson Investments was downgraded.

10. Despite written demands from Travelers on November 21, 2012, December 3, 2012, January 22, 2013, and February 22, 2013, Samson Investment has failed to procure the full and complete discharge of Travelers under the Bonds in the aggregate penal amount of $4,740,528.00. True and correct copies of the discharge demands are attached hereto as Exhibit "2".

11. Despite the written demands, Samson Investment refused to provide an irrevocable letter of credit in favor of Travelers in the full amount of all undischarged liability

and/or loss of Travelers under the Bonds. Therefore, Samson Investment has disregarded and refused to perform its specific obligations and agreements contained in the Indemnity Agreement.

12. Travelers seeks and is entitled to injunctive relief and specific performance of the obligations of Samson Investment under the Indemnity Agreement.

13. Travelers requests that this Court issue an Order compelling Samson Investment to furnish an irrevocable letter of credit in favor of Travelers in the sum of $4,740,528 plus additional funds necessary to secure the expenses, court costs, and attorneys' fees expended and/or will be expended as necessary in order to enforce the Indemnity Agreement. Such relief is specifically mandated by the Indemnity Agreement to ensure that Travelers will be able to secure enforcement of its unconditional rights provided by the Indemnity Agreement.

<u>COUNT ONE</u>
**(Specific Performance and Injunction)**

14. Travelers repeats and reasserts each and every allegation set forth above with the same force and effect as if each such allegation was fully set forth here again at length.

15. Despite the explicit and unambiguous language of the Indemnity Agreement and the written demand letters from Travelers, Samson Investment has refused to perform or honor its specific obligations to procure the full and complete discharge of Travelers under the Bonds and/or to provide Travelers with an irrevocable letter of credit in the full and total amount of all undischarged or potential liability of Travelers in connection with the Bonds, including all losses, costs and expenses Travelers incurred or will incur in connection with the Bonds and/or to secure the enforcement of the specific obligations of Samson Investment under the Indemnity Agreement.

16. On November 21, 2012, December 3, 2012, January 22, 2013, and February 22, 2013, Travelers forwarded written demands to Samson Investment, wherein Travelers

specifically and unequivocally sought compliance with and performance of paragraph 5 of the Indemnity Agreement and to secure enforcement of the unconditional rights of Travelers.

17.     Despite these demands, Samson Investment refused to perform its specific obligations under the Indemnity Agreement, as well as continued to fail to honor or perform such specific obligations despite further attempts of Travelers to secure compliance or performance by Samson Investment of its explicit and unambiguous obligations under the Indemnity Agreement.

18.     The explicit and unambiguous language of the Indemnity Agreement afforded Travelers with unconditional rights and imposed specific obligations on Samson Investment, simply upon demand, to procure the full and complete discharge of Travelers under the Bonds and/or to provide an irrevocable letter of credit in the full and total amount of all undischarged or potential liability and loss of Travelers in connection with the Bonds.

19.     Samson Investment has refused to perform its specific obligations to procure the discharge of Travelers under the Bonds and/or to post collateral to secure all undischarged liability and loss of Travelers in connection with the Bonds.

20.     As demonstrated above and as Samson Investment specifically stipulated and agreed in paragraph 5(b) of the Indemnity Agreement, Travelers has no adequate remedy at law.

21.     For these reasons, Travelers is entitled to specific performance by Samson Investment of the provisions of the Indemnity Agreement relating to its specific obligations to procure the complete discharge of Travelers under the Bonds and/or to post collateral in the form of an irrevocable letter of credit in favor of Travelers in the sum of $4,740,528 to secure all undischarged liability and loss of Travelers in connection with the Bonds and/or in the enforcement of the Indemnity Agreement.

22.     Travelers will be subject to immediate or irreparable harm, in that Samson Investment may be unable to perform or meet its specific obligations under the Indemnity

---

Agreement and/or Travelers will be unable to secure enforcement of its unconditional rights thereunder.

23.     It is plain that, in evaluating the balance of equities, they favor the unconditional rights of Travelers under the Indemnity Agreement and the entitlement of Travelers to enforce such unconditional rights and to require Samson Investment to specifically perform its clear obligations thereunder.

24.     Based on the failure of Samson Investment to perform its contractual obligations, Travelers is entitled to injunctive relief from this Court, compelling Samson Investment (a) to perform its specific obligations, which Samson Investment is specifically obligated to perform under the Indemnity Agreement, (b) to procure the complete discharge of Travelers under the Bonds and/or (c) to provide collateral in the form of an irrevocable letter of credit in favor of Travelers in the sum of $4,740,528 to secure the face amount of the undischarged liability of Travelers under the Bonds.

**COUNT TWO**
**(Collateral Security)**

25.     Travelers repeats and reasserts each and every allegation set forth above with the same force and effect as if each such allegation was fully set forth here again at length.

26.     Samson Investment specifically agreed to procure the full and complete discharge of Travelers under the Bonds and/or to provide an irrevocable letter of credit or collateral in an amount of money sufficient to satisfy "all" undischarged or potential liability in connection with the Bonds, including, but not limited to, "any Loss" incurred in order to secure the compliance of Samson Investment and the enforcement of the Indemnity Agreement.

27.     Samson Investment has refused to honor or perform its specific obligations under the Indemnity Agreement to provide collateral sufficient to protect Travelers, despite written

demand letters from Travelers and its further attempts to secure compliance or performance by Samson Investment.

28.     In addition to the amount of money to satisfy the liability exposure of Travelers on the face of the Bonds in the sum of $4,740,528 to satisfy the amounts Travelers has lost or may incur in connection with the Bonds and/or in order to secure the enforcement of the Indemnity Agreement.

## COUNT THREE
### (Declaratory Judgment)

29.     Travelers repeats and reasserts each and every allegation set forth above with the same force and effect as if each such allegation was fully set forth here again at length.

30.     As set forth above, Samson Investment has refused to perform or honor its specific obligations under the Indemnity Agreement to procure the complete discharge of Travelers under the Bonds and/or to post collateral to secure all undischarged liability and loss of Travelers in connection with the Bonds, despite Travelers' written demand letter.

31.     Samson Investment has failed to comply with and continues to disregard its specific obligations under the Indemnity Agreement, despite the written demand letters issued by Travelers and its further attempts to secure compliance or performance by Samson Investment.

32.     There are actual and justiciable controversies between Travelers and Samson Investment. A declaratory judgment issued by this Court will resolve outstanding issues between Travelers and Samson Investment, and allow Travelers to enforce its unconditional rights and hold Samson Investment to its/their specific obligations under the Indemnity Agreement.

33.     By reason of the foregoing, Travelers is entitled to a declaratory judgment from this Court proclaiming under the Indemnity Agreement: that Travelers has unconditional rights; that Samson Investment have specific obligations, upon demand; and that Samson Investment must procure the full and complete discharge of Travelers under the Bonds and/or post

---

collateral in the form of an irrevocable letter of credit in the sum of $4,740,528 to secure all undischarged liability and loss of Travelers in connection with the Bonds and/or in the enforcement of the Indemnity Agreement as Samson Investment has refused to perform its specific obligations thereunder despite the written demand of Travelers.

## COUNT FOUR
### (Breach of Contract)

34.     Travelers repeats and reasserts each and every allegation set forth above with the same force and effect as if each such allegation was fully set forth here again at length.

35.     As set forth above, Samson Investment has refused to perform or honor its specific obligations under the Indemnity Agreement to procure the complete discharge of Travelers under the Bonds and/or to post collateral to secure all undischarged liability and loss of Travelers in connection with the Bonds, despite the written demand from Travelers.

## COUNT FIVE
### (Recovery of Attorneys' Fees and Interest)

36.     Travelers repeats and reasserts each and every allegation set forth above with the same force and effect as if each such allegation was fully set forth here again at length.

37.     Travelers is entitled to recover its attorneys' fees and expenses from Samson Investment under the Indemnity Agreement.

## PRAYER FOR RELIEF

**WHEREFORE,** Travelers Casualty and Surety Company of America respectfully requests that Samson Investment be cited to appear and answer herein, and that Travelers receive:

1.    On count one against Samson Investment Company, compelling Samson Investment to perform its specific obligations to procure the full and complete discharge of Travelers Casualty and Surety Company of America under the Bonds;

2.    On count two against Samson Investment Company compelling Samson Investment to post additional collateral in the form of an irrevocable letter of credit in favor of Travelers Casualty and Surety Company of America in the sum of $4,740,528, plus additional funds necessary to secure the loss, costs, expenses, court costs and counsel fees expended and/or will be expended as necessary in order to enforce the Indemnity Agreement;

3.    On count three against Samson Investment, declaring that Samson Investment is obligated under the Indemnity Agreement to procure the full and complete discharge of Travelers Casualty and Surety Company of America under the Bonds and/or to post additional collateral in the form of an irrevocable letter of credit in the sum of $4,740,528 in order to secure all undischarged liability and loss of the plaintiff in connection with the Bonds and/or in the enforcement of the Indemnity Agreement;

4.    On count four against Samson Investment, judgment against Samson Investment in the amount of damages incurred by Travelers caused by Samson Investment's breach of contract;

5.      On count five against Samson Investment, judgment against Samson Investment in the amount of attorneys' fees and expenses incurred by Travelers;

6.      Costs of this suit; and

7.      Such other and further relief as this Court may deem just, proper and equitable.

Respectfully submitted,

LANGLEY WEINSTEIN LLP

By: _____

Gregory M. Weinstein
Oklahoma State Bar No. 22030
901 Main Street, Suite 600
Dallas, Texas 75202
214-722-7160
214-722-7161 (Fax)
gweinstein@lwllp.com

**ATTORNEY FOR PLAINTIFF TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA**

## VERIFICATION OF COMPLAINT

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that I have read the foregoing Verified Amended Complaint and the factual allegations thereof and the facts alleged therein are true and correct.

Executed this ___12th___ day of March, 2013.

Robert G. Lavitt
Representative for Travelers Casualty and Surety Company of America

| **General Contract**<br>**Of Indemnity**<br>**(Form AP)** | **TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA**<br>**Hartford, Connecticut  06183** |
|---|---|

We, the undersigned, hereinafter referred to, individually and/or collectively, as "Indemnitors," hereby request, have requested and/or will request TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, ST. PAUL FIRE AND MARINE INSURANCE COMPANY, any of their present or future direct or indirect parent companies, any of the respective present or future direct or indirect affiliates or subsidiaries of such companies and parent companies, and/or any of the aforementioned entities' successors or assigns, hereinafter referred to, individually and/or collectively, as "Company," to execute or procure bonds, undertakings, guarantees, and/or contractual obligations, including renewals and extensions thereof, whether before or after the date of this Agreement, and bonds and undertakings for which Company has obligations as a result of an asset purchase, acquisition, merger or like transaction, hereinafter referred to, individually and/or collectively, as "Bond(s)." As an inducement therefore we make the following representations of fact, promises and agreements:

**REPRESENTATIONS OF FACT:**

1. In the transaction of business one, some or all of the Indemnitors are required, or may desire to give such Bond(s).

2. Indemnitors have a substantial, material and beneficial interest (a) in the obtaining of Bond(s) by any of the Indemnitors and (b) in the transaction(s) for which any other Indemnitor has applied or will apply to Company for Bond(s) pursuant to this General Contract of Indemnity, hereinafter referred to as "Agreement." It is understood that the purpose of this Agreement is to induce Company to furnish Bond(s); however, Company is under no obligation to furnish Bond(s) to Indemnitors.

3. Indemnitors have the full power and authority to execute, deliver and perform this Agreement and to carry out the obligations stated herein. Indemnitors further acknowledge and agree that (a) the execution, delivery and performance of this Agreement by such Indemnitors, (b) the compliance with the terms and provisions hereof, and (c) the carrying out of the obligations contemplated herein, do not, and will not, conflict with and will not result in a breach or violation of any terms, conditions or provisions of the charter documents or bylaws of such Indemnitors, or any law, governmental rule or regulation, or any applicable order, writ, injunction, judgment or decree of any court or governmental authority against Indemnitors, or any other agreement binding upon Indemnitors, or constitute a default thereunder.

**PROMISES AND AGREEMENTS:** In consideration of the furnishing of any such Bond, the forbearance of cancellation of any existing Bond(s) by Company, the assumption of obligations by Company of any Bond, and for other valuable consideration, Indemnitors hereby jointly and severally promise and agree as follows:

1. To pay all premiums for each Bond, as they fall due, until Company has been provided with competent legal evidence that the Bond has been duly discharged.

2. To indemnify and exonerate Company from and against any and all loss, cost and expense of whatever kind which it may incur or sustain as a result of or in connection with the furnishing of Bond(s), the assumption of obligations by Company of Bond(s), and/or the enforcement of this Agreement, including unpaid premiums, interest, court costs and counsel fees, and any expense incurred or sustained by reason of making any investigation, hereinafter referred to as "Loss." To this end Indemnitors promise:

   (a) To promptly reimburse Company for all sums paid on account of such Loss and it is agreed that (1) originals or photocopies of claim drafts, or of payment records, kept in the ordinary course of business, including computer printouts, verified by affidavit, shall be prima facie evidence of the fact and amount of such Loss, and (2) Company shall be entitled to reimbursement for any and all disbursements made by it, under the belief that it was liable, or that such disbursement was necessary or expedient.

   (b) To deposit with Company, on demand, the amount of any reserve against such Loss which Company is required, or deems it prudent to establish whether on account of an actual liability or one which is, or may be, asserted against it and whether or not any payment for such Loss has been made.

3. This Agreement shall apply to any and all Bond(s) furnished as follows:

   (a) If Company executes the Bond(s), procures the execution of Bond(s) by other sureties, executes Bond(s) with co-sureties and/or obtains reinsurance;

   (b) For or on behalf of any or all of the following:

      (1) One, some or all of the Indemnitors;

      (2) Any joint venture or other form of common enterprise in which Indemnitors were members at the time the Bond(s) were furnished;

      (3) Any present or future affiliate and/or subsidiary of Indemnitors;

      (4) Any third party at the request of Indemnitors, their subsidiaries and/or affiliates.

4. (a) The validity and effect of this Agreement shall not be impaired by, and Company shall incur no liability on account of, and Indemnitors need not be notified of:

      (1) Company's failure or refusal to furnish Bond(s), including final Bond(s) where Company has furnished a bid Bond;



(2)   Company's consent or failure to consent to changes in the terms and provisions of any Bond, or the obligation or performance secured by any Bond;

(3)   The taking, failing to take, or release of security, collateral, assignment, indemnity agreements and the like, as to any Bond;

(4)   The release by Company, on terms satisfactory to it, of any Indemnitors; or

(5)   Information which may come to the attention of Company which affects or might affect its rights and liabilities or those of any of the Indemnitors.

(b)   The validity and effect of this Agreement shall not be impaired by and Company shall incur no liability on account of the cancellation or termination of any Bond(s).

5.   (a)   Indemnitors shall, within thirty (30) days of receipt of Company's written demand ("Discharge Demand"), procure the full and complete discharge of the Company from any and all Bond(s) by providing competent written evidence of discharge satisfactory to Company, in its sole discretion.  If Indemnitors fail to provide the aforementioned discharge Indemnitors shall, within an additional seven (7) days, provide Company with an irrevocable letter of credit in form, content and by a bank acceptable to Company.  The letter of credit shall be in an amount equal to the total of all undischarged liability under said Bond(s), which liability shall be determined at the time of the Company's Discharge Demand.  Collateral or letters of credit previously provided to Company may be utilized to establish compliance with this provision.  If the undischarged liability subsequently increases, then it is the Indemnitors' responsibility to ensure continued compliance with this provision at all times.

(b)   Indemnitors waive, to the fullest extent permitted by law, each and every right that they may have to contest this requirement. Indemnitors stipulate and agree that Company will not have an adequate remedy at law should Indemnitors fail to post said letter of credit and further agree as a result that Company is entitled to specific performance of this provision.  Company's failure to act to enforce its right to specific performance shall not be construed as a waiver of that right, which right may be enforced at any time at the Company's sole discretion.

(c)   Indemnitors further agree that this requirement for a letter of credit shall not limit or be deemed a waiver of the Company's other rights, which it may exercise in its sole discretion, under this Agreement or otherwise to cancel Bond(s), to demand collateral or letters of credit, or to take any other actions Company deems necessary and/or prudent, in its sole discretion, to mitigate actual or potential Loss under any and all Bond(s) written in accordance with this Agreement.  The exercise of such additional rights shall not be contingent upon the Company's enforcement of this provision.

6.   Any letter of credit to be provided to Company shall be sent via overnight delivery to the following address: St. Paul Travelers Bond, Attention: Bond Finance - Collateral Processing, One Tower Square, Hartford, Connecticut 06183.

7.   Indemnitors shall have no rights of indemnity, contribution or right to seek collection of any other outstanding obligation against any other Indemnitors or their property until the obligations of the Indemnitors to Company under this Agreement have been satisfied in full.

8.   Company shall have the right, in its sole discretion, (a) to deem this Agreement breached should any Indemnitor become involved in any agreement or proceeding of liquidation, receivership, bankruptcy, insolvency or creditor assignment, whether voluntarily or involuntarily, or should any Indemnitor, if an individual, die, or be convicted of a felony, become a fugitive from justice, or for any reason disappear and cannot immediately be found by Company by use of usual methods, and (b) to adjust, settle, compromise or defend any claim, demand, suit or judgment upon any Bond(s).

9.   If Company has or obtains collateral or letters of credit, Company shall not  have any obligation to release collateral or letters of credit or turn over the proceeds thereof until it shall have received a written release in form and substance satisfactory to Company with respect to each and every Bond.  Any collateral or letters of credit provided to Company by any Indemnitor or any third party, or the proceeds thereof, may be applied to any Loss.

10.   Indemnitors also understand and agree that their obligations remain in full force and effect for any Bond(s) issued pursuant to this Agreement, notwithstanding that the entity on whose behalf Bond(s) were issued has been sold, dissolved or whose ownership has been otherwise altered in any way.

11.   This Agreement shall remain in full force and effect until terminated.  Indemnitors may only terminate participation in this Agreement by providing written notice to Company of Indemnitors' intent to terminate.  Such notice shall be addressed to St. Paul Travelers Bond, Attention: Senior Vice President Commercial Surety, One Tower Square, Hartford, Connecticut 06183.  Such notice of termination shall become effective thirty (30) days after Company's receipt of the same.  The obligations and liability of Indemnitors giving such notice shall thereafter be limited to Bond(s) furnished before the effective date of the notice, which liability shall include any Bond(s) which were originally issued prior to the effective date of notice and renewed or otherwise extended subsequent to the notice or effective date of termination.

12.   Indemnitors hereby expressly authorize Company to access credit records and to make such pertinent inquiries as may be necessary from third party sources for underwriting purposes, claim purposes and/or debt collection.  To the extent required by law, Company will, upon request, provide notice whether or not a consumer report has been requested by Company, and if so, the name and address of the consumer reporting agency furnishing the report.

13.   In the event of a claim or notice of a potential claim, Company shall have the right, at all times, to free access to the books, records, and accounts of the Indemnitors for the purpose of examining the same.

14. Company may furnish copies of any and all statements, agreements, financial statements and any information which it now has or may hereafter obtain concerning Indemnitors, to other persons or companies for the purpose of procuring co-suretyship or reinsurance.

15. A duplicate or facsimile copy or electronic reproduction of the original document shall have the same force and effect as the original.

16. This Agreement may be executed in any number of counterparts, each of which shall be an original but all of which together shall constitute one instrument. Each counterpart may consist of a number of copies hereof, each signed by less than all, but together signed by all, of the parties hereto.

17. If any provision or portion of this Agreement shall be unenforceable, this Agreement shall not be void, but shall be construed and enforced with the same effect as though such provision or portion were omitted.

18. This Agreement is in addition to and not in lieu of any other agreements and obligations undertaken in favor of Company, whether now existing or entered into hereafter.

19. The rights and remedies afforded to Company by the terms of this Agreement can only be impaired by a written rider to this Agreement signed by an authorized employee of the Company.

20. Company's failure to act to enforce any or all of its rights under this Agreement shall not be construed as a waiver of these rights.

21. The date of this Agreement shall be the earliest date any Indemnitor executes this Agreement.

22. Special Provisions: n/a

**WE HAVE READ THIS CONTRACT OF INDEMNITY CAREFULLY. THERE ARE NO SEPARATE AGREEMENTS OR UNDERSTANDINGS WHICH IN ANY WAY LESSEN OUR OBLIGATIONS AS ABOVE SET FORTH. IN TESTIMONY HEREOF, WE THE INDEMNITORS HAVE SET OUR HANDS AND FIXED OUR SEALS AS SET FORTH BELOW.**

## If Indemnitor a Corporation, Limited Liability Company or Partnership, sign below:

Instructions: If the entity is: 1) a corporation the secretary and an authorized officer should sign on behalf of the corporation, 2) a limited liability company the manager(s) or member(s) should sign on behalf of the LLC, or 3) a partnership the partner(s) should sign on behalf of the partnership. Two signatures are required for all entities and all signatures must be notarized and dated. Please provide the entity's federal tax identification number on the line provided.

Each of the undersigned hereby affirms to Company as follows: I am a duly authorized official of the business entity Indemnitor on whose behalf I am executing this Agreement. In such capacity I am familiar with all of the documents which set forth and establish the rights which govern the affairs, power and authority of such business entity including, to the extent applicable, the certificate or articles of incorporation, bylaws, corporate resolutions and/or partnership, operating or limited liability agreements of such business entity. Having reviewed all such applicable documents and instruments and such other facts as deemed appropriate, I hereby affirm that such entity has the power and authority to enter into this Agreement and that the individuals executing this Agreement on behalf of such entity are duly authorized to do so.

**Samson Investment Company**
_____     (Seal)
(Indemnitor Name)                   (First Signature)
                                    Michael G. Daniel
_____     Vice President-General Counsel        2/19/09
(Federal Tax ID)                    (Print or Type Name and Title)        (Date)

                                    _____(Seal)
                                    (Second Signature)
                                    Annabel M. Jones
                                    Secretary                            2/19/09
                                    (Print or Type Name and Title)        (Date)

ACKNOWLEDGEMENT
STATE OF _____Oklahoma_____          County of ___Tulsa___

On this 19th day of ___February___, 2009, before me personally appeared ___Michael G. Daniel___, known or proven to me to be the ___Vice President-General Counsel___ of the entity executing the foregoing instrument ("Entity") and ___Annabel M. Jones___, known or proven to me to be the ___Secretary___ of the Entity, and they acknowledged said instrument to be the free and voluntary act and deed of said Entity, for the uses and purposes therein mentioned and on oath stated that the seal affixed is the seal of said Entity and that it was affixed and that they executed said instrument by authority of the Entity. IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written.

Notary Public residing at _Tulsa County, Oklahoma_
(Commission expires _3-12-2012_)

Notary Public
State of Oklahoma
LINDA PASCHALL
TULSA COUNTY
COMMISSION #00002582
Comm. Exp. 03-12-2012

Samson Lone Star, LLC successor via merger
to Samson Lone Star Limited Partnership

_____            _____ (Seal)
(Indemnitor Name)                                     (First Signature)
                                                      D.J. Ponville
_____            Executive Vice President        2/19/09
(Federal Tax ID)                                      (Print or Type Name and Title)       (Date)

                                                      _____ (Seal)
                                                      (Second Signature)
                                                      Annabel M. Jones
                                                      Secretary                       2/19/09
                                                      (Print or Type Name and Title)       (Date)

**ACKNOWLEDGEMENT**
STATE OF _____Oklahoma_____        County of ___Tulsa_____

On this __19th_day of _February___, _2009_, before me personally appeared __D.J. Ponville_____, known or proven to me to be the __Executive Vice President_____ of the entity executing the foregoing instrument ("Entity") and __Annabel M. Jones_____, known or proven to me to be the __Secretary_____ of the Entity, and they acknowledged said instrument to be the free and voluntary act and deed of said Entity, for the uses and purposes therein mentioned and on oath stated that the seal affixed is the seal of said Entity and that it was affixed and that they executed said instrument by authority of the Entity.  IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written.



                                        _Linda Paschall_____
                                        Notary Public residing at _Tulsa County, Oklahoma_
                                        (Commission expires _3-12-2012___)

Notary Public
State of Oklahoma
LINDA PASCHALL
TULSA COUNTY
COMMISSION #00003562
Comm. Exp. 03-12-2012

S-2412A-P (04-04c)


**TRAVELERS**

**Christopher M. Garrett, CPCU, AFSB**

Account Executive Officer
Commercial Surety, Midwest Region

(314) 579-8328
(888) 400-6771 (fax)

940 West Port Plaza, Suite 270
Maryland Heights, MO 63146

November 21, 2012

***Via Federal Express***
Samson Investment Company
Attn: Annabel M. Jones
Assistant General Counsel – Corporate Affairs
Samson Plaza
Two West Second Street
Tulsa, Oklahoma 74103-3103

Indemnitor:   Samson Investment Company
Re:  <u>Discharge Demand</u>

Dear Ms. Jones:

On February 19, 2009, Samson Investment Company (the "Indemnitor") executed a General Contract of Indemnity (Form AP) ("GCI") with Travelers Casualty and Surety Company of America for itself, affiliates, parent and subsidiaries (the "Company"), an executed copy of which is attached.   As set forth in the Promises and Agreements section of the GCI, paragraph number 5.(a), the Indemnitor agreed to "procure the full and complete discharge of the Company from any and all Bond(s) by providing competent written evidence of discharge satisfactory to the Company in its sole discretion" within thirty (30) days of receipt of the Company's written demand or, if such discharge is not obtained, provide the Company with Collateral in the form of an irrevocable letter of credit within an additional seven (7) days.

In accordance with the provisions of the GCI, demand is hereby made upon the Indemnitor to provide the Company with either: (i) the full and complete discharge of the Company from each of the enclosed list of Bonds issued by the Company on behalf of Indemnitor no later than **December 22, 2012**, or (ii) with an irrevocable letter of credit in an amount equal to 100% of all undischarged liability no later than **December 29, 2012**.  If a letter of credit is to be provided, it shall be provided in form (see copy enclosed), content and by a bank acceptable to the Company.   As of the date of this Discharge Demand, the undischarged liability under the Bonds is Ten Million One Hundred Thirty One Thousand Seven Hundred Sixty Dollars and no cents ($10,131,760).   Therefore, if an irrevocable letter of credit is to be provided, it should be in the amount of Ten Million One Hundred Thirty One Thousand Seven Hundred Sixty Dollars and no cents ($10,131,760).

Sample language to release the Company from issued Bonds is enclosed.   If the Company is to be discharged from liability by a release from any Bond, then the enclosed language should be completed for the Bond to be released, printed on letterhead of the Bond Obligee and signed by an authorized representative of the Bond Obligee.



A member of ST. PAUL TRAVELERS

Page 2

If an irrevocable letter of credit will be provided, please forward it to the following address:

> Travelers Bond
> Attn: Anna Nowik
> Bond Finance, Collateral Processing
> One Tower Square – S202B
> Hartford, CT  06183

Please note, should the undischarged liability subsequently increase, Indemnitors are required to provide an irrevocable letter of credit to cover 100% of the increased liability.

Nothing herein shall be construed as a waiver of any rights and/or remedies of the Company, including without limitation those contained in the GCI, and any and all rights are specifically reserved herein.

In the event you have questions you may contact me at telephone number (314) 579-8328.

Sincerely,


Christopher M. Garrett


**TRAVELERS**

**Christopher M. Garrett, CPCU, AFSB**

Account Executive Officer
Commercial Surety, Midwest Region

(314) 579-8328
(888) 400-6771 (fax)

940 West Port Plaza, Suite 270
Maryland Heights, MO 63146

December 3, 2012

***Via Federal Express***
Samson Investment Company
Attn: Annabel M. Jones
Assistant General Counsel – Corporate Affairs
Samson Plaza
Two West Second Street
Tulsa, Oklahoma 74103-3103

Indemnitor:   Samson Investment Company
Re:  <u>Discharge Demand</u>

Dear Ms. Jones:

On February 19, 2009, Samson Investment Company (the "Indemnitor") executed a General Contract of Indemnity (Form AP) ("GCI") with Travelers Casualty and Surety Company of America for itself, affiliates, parent and subsidiaries (the "Company").   As set forth in the Promises and Agreements section of the GCI, paragraph number 5.(a), the Indemnitor agreed to "procure the full and complete discharge of the Company from any and all Bond(s) by providing competent written evidence of discharge satisfactory to the Company in its sole discretion" within thirty (30) days of receipt of the Company's written demand or, if such discharge is not obtained, provide the Company with Collateral in the form of an irrevocable letter of credit within an additional seven (7) days.

In accordance with the provisions of the GCI, by letter dated November 21, 2012 Travelers served a demand upon the Indemnitor to provide the Company with either: (i) the full and complete discharge of the Company from each of the enclosed list of Bonds issued by the Company on behalf of Indemnitor no later than December 22, 2012, or (ii) with an irrevocable letter of credit in an amount equal to 100% of all undischarged liability no later than December 29, 2012.  The November 21, 2012 letter and its enclosures is referenced as if set forth herein at length.

Travelers has been advised, however, that the Indemnitor is actively seeking to replace the Bonds with surety bonds provided by another surety.  The Indemnitor has advised that it will need additional time to make these replacements.   Notwithstanding Travelers' rights pursuant to paragraph 5 of the GCI, Travelers hereby agrees to extend the time for the Indemnitors to obtain the full and complete discharge of Travelers from each of the Bonds until no later than **January 14, 2013**, or to provide Travelers with an irrevocable letter of credit in an amount equal to 100% of all undischarged liability no later than **January 21, 2013.**

Nothing herein shall be construed as a waiver of any rights and/or remedies of the Company, including without limitation those contained in the GCI, and any and all rights are specifically reserved herein.

A member of ST. PAUL TRAVELERS

Page 2

In the event you have questions you may contact me at telephone number (314) 579-8328.

Sincerely,

Christopher M. Garrett



**Christopher M. Garrett, CPCU, AFSB**

Account Executive Officer
Commercial Surety, Midwest Region

(314) 579-8328
(888) 400-6771 (fax)

940 West Port Plaza, Suite 270
Maryland Heights, MO 63146

January 22, 2013

**_Via Federal Express_**

Samson Investment Company
Attn: Annabel M. Jones
Assistant General Counsel – Corporate Affairs
Samson Plaza
Two West Second Street
Tulsa, Oklahoma 74103-3103

Indemnitor:   Samson Investment Company
Re:   Discharge Demand

Dear Ms. Jones:

On February 19, 2009, Samson Investment Company (the "Indemnitor") executed a General Contract of Indemnity (Form AP) ("GCI") with Travelers Casualty and Surety Company of America for itself, affiliates, parent and subsidiaries (the "Company").   As set forth in the Promises and Agreements section of the GCI, paragraph number 5.(a), the Indemnitor agreed to "procure the full and complete discharge of the Company from any and all Bond(s) by providing competent written evidence of discharge satisfactory to the Company in its sole discretion" within thirty (30) days of receipt of the Company's written demand or, if such discharge is not obtained, provide the Company with Collateral in the form of an irrevocable letter of credit within an additional seven (7) days.

In accordance with the provisions of the GCI, by letter dated November 21, 2012 Travelers served a demand upon the Indemnitor to provide the Company with either: (i) the full and complete discharge of the Company from each of the enclosed list of Bonds issued by the Company on behalf of Indemnitor no later than December 22, 2012, or (ii) with an irrevocable letter of credit in an amount equal to 100% of all undischarged liability no later than December 29, 2012.  The November 21, 2012 letter and its enclosures is referenced as if set forth herein at length.

Travelers has been advised, however, that the Indemnitor is actively seeking to replace the Bonds with surety bonds provided by another surety.  The Indemnitor has advised that it will need additional time to make these replacements.  Notwithstanding Travelers' rights pursuant to paragraph 5 of the GCI, Travelers hereby agrees to extend the time for the Indemnitors to obtain the full and complete discharge of Travelers from each of the Bonds until no later than **February 14, 2013**, or to provide Travelers with an irrevocable letter of credit in an amount equal to 100% of all undischarged liability no later than **February 21, 2013.**

Nothing herein shall be construed as a waiver of any rights and/or remedies of the Company, including without limitation those contained in the GCI, and any and all rights are specifically reserved herein.

A member of ST. PAUL TRAVELERS

Page 2

In the event you have questions you may contact me at telephone number (314) 579-8328.

Sincerely,

Christopher M. Garrett

# LANGLEY WEINSTEIN

A T T O R N E Y S & C O U N S E L O R S | LLP

901 MAIN STREET TEL 214 722 7160 www.lwllp.com
SUITE 600 FAX 214 722 7161
DALLAS, TEXAS 75202

gweinstein@lwllp.com

DIR 214 722 7165

February 22, 2013

**VIA FEDERAL EXPRESS:  OVERNIGHT DELIVERY**

Samson Investment Company
Attn: Annabel M. Jones
Assistant General Counsel – Corporate Affairs
Samson Plaza
Two West Second Street
Tulsa, Oklahoma 74103-3103

   Re: Principals: Samson Investment Company; Samson Resources Company;
         Samson Lone Star, LLC; Samson Hydrocarbons Company;
         Samson Offshore Company; Samson Contour Energy E&P, LLC;
         Samson 2003, LLC; and Geodyne Nominee Corporation
     Surety: Travelers Casualty and Surety Company of America
     Obligees: Various
     Bonds: Various
     Projects: Various
     Indemnitor: Samson Investment Company

Dear Ms. Jones:

  This firm represents Travelers Casualty and Surety Company of America (the "Surety")
in connection with surety bonds issued on behalf of Samson Investment Company ("Samson").
Please direct any and all future communications on this matter to us.  The purpose of this letter is
to make a final collateral demand on Samson.

  Samson executed a General Contract of Indemnity dated February 19, 2009 (the "GCI")
(courtesy copy enclosed).  Paragraph 5(a) of the GCI expressly provides the following:

  Indemnitors shall, within thirty (30) days of receipt of Company's written demand
  ("Discharge Demand"), procure the full and complete discharge of the Company
  from any and all Bond(s) by providing competent written evidence of discharge
  satisfactory to the Company, in its sole discretion.  If Indemnitors fail to provide
  the aforementioned discharge Indemnitors shall, within an additional seven (7)
  days, provide Company with an irrevocable letter of credit in form, content and
  by a bank acceptable to the Company.  The letter of credit shall be in an amount

Ms. Annabel M. Jones
February 22, 2013
Page 2

equal to the total of all undischarged liability under said Bond(s), which liability shall be determined at the time of the Company's Discharge Demand.  Collateral or letters of credit previously provided to Company may be utilized to establish compliance with the provision.   If the undischarged liability subsequently increases, then it is the Indemnitors' responsibility to ensure continued compliance with this provision at all times.

On November 21, 2012, the Surety issued a Discharge Demand to Samson pursuant to Paragraph 5(a) of the GCI.   The Discharge Demand specifically requested Samson to provide a full and complete discharge of the Surety.  In an effort to work with Samson, the Surety issued two additional discharge demands that extended the deadline for Samson to comply with its obligations under Paragraph 5(a) of the GCI.  The most recent Discharge Demand dated January 22, 2013, requested Samson to obtain the full and complete discharge of the Surety by February 14, 2013, or, alternatively provide the Surety with an irrevocable letter of credit by February 21, 2013, in an amount equal to 100% of all undischarged liability.  The deadlines in the January 22, 2013, Discharge Demand have passed with Samson failing to perform.

**Formal demand** is hereby made on Samson to provide the Surety with an irrevocable letter of credit or any other form of collateral acceptable to the Surety (the "Collateral") in an amount equal to 100% of all undischarged liability no later than **4:00 PM, EST, Friday, March 1, 2013**.  As of the date of this letter, the undischarged liability under the bonds issued on behalf of the Principals is $9,779,728.

The Collateral should be forwarded to:

> Travelers Bond
> Attn: Anna Nowik
> Bond Finance, Collateral Processing
> One Tower Square – S202B
> Hartford, CT  06183

Should Samson fail to post the Collateral with the Surety by March 1, 2013, the Surety has authorized us to file suit against Samson.  Other than actual damages, please be advised that the Surety will also seek to recover its attorneys' fees, professional fees, expenses, and costs pursuant to Paragraph 2 of the GCI and applicable law.

Nothing herein shall be deemed to be an estoppel, waiver, or modification of any of the rights or defenses of the Surety. The Surety reserves all of its rights and defenses under any bond, contract, agreement, or applicable law.  The Surety also makes a specific reservation of the right to demand collateral at any time should the Surety anticipate further losses under the bonds issued on behalf of the Indemnitor.  This Surety also reserves its right to demand indemnity for additional losses suffered in the future.

Ms. Annabel M. Jones
February 22, 2013
Page 3

The cooperation of Samson will be appreciated.

Sincerely,

Gregory M. Weinstein

GMW/prg

Enclosure

cc:    Mr. Robert G. Lavitt
       Mr. Ryan D. Dry

## General Contract
## Of Indemnity
### (Form AP)

**TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA**
**Hartford, Connecticut  06183**

We, the undersigned, hereinafter referred to, individually and/or collectively, as "Indemnitors," hereby request, have requested and/or will request TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, ST. PAUL FIRE AND MARINE INSURANCE COMPANY, any of their present or future direct or indirect parent companies, any of the respective present or future direct or indirect affiliates or subsidiaries of such companies and parent companies, and/or any of the aforementioned entities' successors or assigns, hereinafter referred to, individually and/or collectively, as "Company," to execute or procure bonds, undertakings, guarantees, and/or contractual obligations, including renewals and extensions thereof, whether before or after the date of this Agreement, and bonds and undertakings for which Company has obligations as a result of an asset purchase, acquisition, merger or like transaction, hereinafter referred to, individually and/or collectively, as "Bond(s)."  As an inducement therefore we make the following representations of fact, promises and agreements:

**REPRESENTATIONS OF FACT:**

1.   In the transaction of business one, some or all of the Indemnitors are required, or may desire to give such Bond(s).

2.   Indemnitors have a substantial, material and beneficial interest (a) in the obtaining of Bond(s) by any of the Indemnitors and (b) in the transaction(s) for which any other Indemnitor has applied or will apply to Company for Bond(s) pursuant to this General Contract of Indemnity, hereinafter referred to as "Agreement."  It is understood that the purpose of this Agreement is to induce Company to furnish Bond(s); however, Company is under no obligation to furnish Bond(s) to Indemnitors.

3.   Indemnitors have the full power and authority to execute, deliver and perform this Agreement and to carry out the obligations stated herein.  Indemnitors further acknowledge and agree that (a) the execution, delivery and performance of this Agreement by such Indemnitors, (b) the compliance with the terms and provisions hereof, and (c) the carrying out of the obligations contemplated herein, do not, and will not, conflict with and will not result in a breach or violation of any terms, conditions or provisions of the charter documents or bylaws of such Indemnitors, or any law, governmental rule or regulation, or any applicable order, writ, injunction, judgment or decree of any court or governmental authority against Indemnitors, or any other agreement binding upon Indemnitors, or constitute a default thereunder.

**PROMISES AND AGREEMENTS:**  In consideration of the furnishing of any such Bond, the forbearance of cancellation of any existing Bond(s) by Company, the assumption of obligations by Company of any Bond, and for other valuable consideration, Indemnitors hereby jointly and severally promise and agree as follows:

1.   To pay all premiums for each Bond, as they fall due, until Company has been provided with competent legal evidence that the Bond has been duly discharged.

2.   To indemnify and exonerate Company from and against any and all loss, cost and expense of whatever kind which it may incur or sustain as a result of or in connection with the furnishing of Bond(s), the assumption of obligations by Company of Bond(s), and/or the enforcement of this Agreement, including unpaid premiums, interest, court costs and counsel fees, and any expense incurred or sustained by reason of making any investigation, hereinafter referred to as "Loss." To this end Indemnitors promise:

   (a)   To promptly reimburse Company for all sums paid on account of such Loss and it is agreed that (1) originals or photocopies of claim drafts, or of payment records, kept in the ordinary course of business, including computer printouts, verified by affidavit, shall be prima facie evidence of the fact and amount of such Loss, and (2) Company shall be entitled to reimbursement for any and all disbursements made by it, under the belief that it was liable, or that such disbursement was necessary or expedient.

   (b)   To deposit with Company, on demand, the amount of any reserve against such Loss which Company is required, or deems it prudent to establish whether on account of an actual liability or one which is, or may be, asserted against it and whether or not any payment for such Loss has been made.

3.   This Agreement shall apply to any and all Bond(s) furnished as follows:

   (a)   If Company executes the Bond(s), procures the execution of Bond(s) by other sureties, executes Bond(s) with co-sureties and/or obtains reinsurance;

   (b)   For or on behalf of any or all of the following:

      (1)   One, some or all of the Indemnitors;

      (2)   Any joint venture or other form of common enterprise in which Indemnitors were members at the time the Bond(s) were furnished;

      (3)   Any present or future affiliate and/or subsidiary of Indemnitors;

      (4)   Any third party at the request of Indemnitors, their subsidiaries and/or affiliates.

4.   (a)   The validity and effect of this Agreement shall not be impaired by, and Company shall incur no liability on account of, and Indemnitors need not be notified of:

      (1)   Company's failure or refusal to furnish Bond(s), including final Bond(s) where Company has furnished a bid Bond;

(2) Company's consent or failure to consent to changes in the terms and provisions of any Bond, or the obligation or performance secured by any Bond;

(3) The taking, failing to take, or release of security, collateral, assignment, indemnity agreements and the like, as to any Bond;

(4) The release by Company, on terms satisfactory to it, of any Indemnitors; or

(5) Information which may come to the attention of Company which affects or might affect its rights and liabilities or those of any of the Indemnitors.

(b) The validity and effect of this Agreement shall not be impaired by and Company shall incur no liability on account of the cancellation or termination of any Bond(s).

5. (a) Indemnitors shall, within thirty (30) days of receipt of Company's written demand ("Discharge Demand"), procure the full and complete discharge of the Company from any and all Bond(s) by providing competent written evidence of discharge satisfactory to Company, in its sole discretion. If Indemnitors fail to provide the aforementioned discharge Indemnitors shall, within an additional seven (7) days, provide Company with an irrevocable letter of credit in form, content and by a bank acceptable to Company. The letter of credit shall be in an amount equal to the total of all undischarged liability under said Bond(s), which liability shall be determined at the time of the Company's Discharge Demand. Collateral or letters of credit previously provided to Company may be utilized to establish compliance with this provision. If the undischarged liability subsequently increases, then it is the Indemnitors' responsibility to ensure continued compliance with this provision at all times.

(b) Indemnitors waive, to the fullest extent permitted by law, each and every right that they may have to contest this requirement. Indemnitors stipulate and agree that Company will not have an adequate remedy at law should Indemnitors fail to post said letter of credit and further agree as a result that Company is entitled to specific performance of this provision. Company's failure to act to enforce its right to specific performance shall not be construed as a waiver of that right, which right may be enforced at any time at the Company's sole discretion.

(c) Indemnitors further agree that this requirement for a letter of credit shall not limit or be deemed a waiver of the Company's other rights, which it may exercise in its sole discretion, under this Agreement or otherwise to cancel Bond(s), to demand collateral or letters of credit, or to take any other actions Company deems necessary and/or prudent, in its sole discretion, to mitigate actual or potential Loss under any and all Bond(s) written in accordance with this Agreement. The exercise of such additional rights shall not be contingent upon the Company's enforcement of this provision.

6. Any letter of credit to be provided to Company shall be sent via overnight delivery to the following address: St. Paul Travelers Bond, Attention: Bond Finance - Collateral Processing, One Tower Square, Hartford, Connecticut 06183.

7. Indemnitors shall have no rights of indemnity, contribution or right to seek collection of any other outstanding obligation against any other Indemnitors or their property until the obligations of the Indemnitors to Company under this Agreement have been satisfied in full.

8. Company shall have the right, in its sole discretion, (a) to deem this Agreement breached should any Indemnitor become involved in any agreement or proceeding of liquidation, receivership, bankruptcy, insolvency or creditor assignment, whether voluntarily or involuntarily, or should any Indemnitor, if an individual, die, or be convicted of a felony, become a fugitive from justice, or for any reason disappear and cannot immediately be found by Company by use of usual methods, and (b) to adjust, settle, compromise or defend any claim, demand, suit or judgment upon any Bond(s).

9. If Company has or obtains collateral or letters of credit, Company shall not have any obligation to release collateral or letters of credit or turn over the proceeds thereof until it shall have received a written release in form and substance satisfactory to Company with respect to each and every Bond. Any collateral or letters of credit provided to Company by any Indemnitor or any third party, or the proceeds thereof, may be applied to any Loss.

10. Indemnitors also understand and agree that their obligations remain in full force and effect for any Bond(s) issued pursuant to this Agreement, notwithstanding that the entity on whose behalf Bond(s) were issued has been sold, dissolved or whose ownership has been otherwise altered in any way.

11. This Agreement shall remain in full force and effect until terminated. Indemnitors may only terminate participation in this Agreement by providing written notice to Company of Indemnitors' intent to terminate. Such notice shall be addressed to St. Paul Travelers Bond, Attention: Senior Vice President Commercial Surety, One Tower Square, Hartford, Connecticut 06183. Such notice of termination shall become effective thirty (30) days after Company's receipt of the same. The obligations and liability of Indemnitors giving such notice shall thereafter be limited to Bond(s) furnished before the effective date of the notice, which liability shall include any Bond(s) which were originally issued prior to the effective date of notice and renewed or otherwise extended subsequent to the notice or effective date of termination.

12. Indemnitors hereby expressly authorize Company to access credit records and to make such pertinent inquiries as may be necessary from third party sources for underwriting purposes, claim purposes and/or debt collection. To the extent required by law, Company will, upon request, provide notice whether or not a consumer report has been requested by Company, and if so, the name and address of the consumer reporting agency furnishing the report.

13. In the event of a claim or notice of a potential claim, Company shall have the right, at all times, to free access to the books, records, and accounts of the Indemnitors for the purpose of examining the same.

14. Company may furnish copies of any and all statements, agreements, financial statements and any information which it now has or may hereafter obtain concerning Indemnitors, to other persons or companies for the purpose of procuring co-suretyship or reinsurance.

15. A duplicate or facsimile copy or electronic reproduction of the original document shall have the same force and effect as the original.

16. This Agreement may be executed in any number of counterparts, each of which shall be an original but all of which together shall constitute one instrument. Each counterpart may consist of a number of copies hereof, each signed by less than all, but together signed by all, of the parties hereto.

17. If any provision or portion of this Agreement shall be unenforceable, this Agreement shall not be void, but shall be construed and enforced with the same effect as though such provision or portion were omitted.

18. This Agreement is in addition to and not in lieu of any other agreements and obligations undertaken in favor of Company, whether now existing or entered into hereafter.

19. The rights and remedies afforded to Company by the terms of this Agreement can only be impaired by a written rider to this Agreement signed by an authorized employee of the Company.

20. Company's failure to act to enforce any or all of its rights under this Agreement shall not be construed as a waiver of these rights.

21. The date of this Agreement shall be the earliest date any Indemnitor executes this Agreement.

22. Special Provisions: n/a

**WE HAVE READ THIS CONTRACT OF INDEMNITY CAREFULLY.   THERE ARE NO SEPARATE AGREEMENTS OR UNDERSTANDINGS WHICH IN ANY WAY LESSEN OUR OBLIGATIONS AS ABOVE SET FORTH. IN TESTIMONY HEREOF, WE THE INDEMNITORS HAVE SET OUR HANDS AND FIXED OUR SEALS AS SET FORTH BELOW.**

## If Indemnitor a Corporation, Limited Liability Company or Partnership, sign below:

Instructions:  If the entity is:  1) a corporation the secretary and an authorized officer should sign on behalf of the corporation, 2) a limited liability company the manager(s) or member(s) should sign on behalf of the LLC, or 3) a partnership the partner(s) should sign on behalf of the partnership.  Two signatures are required for all entities and all signatures must be notarized and dated.  Please provide the entity's federal tax identification number on the line provided.

Each of the undersigned hereby affirms to Company as follows:  I am a duly authorized official of the business entity Indemnitor on whose behalf I am executing this Agreement.  In such capacity I am familiar with all of the documents which set forth and establish the rights which govern the affairs, power and authority of such business entity including, to the extent applicable, the certificate or articles of incorporation, bylaws, corporate resolutions and/or partnership, operating or limited liability agreements of such business entity. Having reviewed all such applicable documents and instruments and such other facts as deemed appropriate, I hereby affirm that such entity has the power and authority to enter into this Agreement and that the individuals executing this Agreement on behalf of such entity are duly authorized to do so.

**Samson Investment Company** _____     _____ (Seal)
(Indemnitor Name)                       (First Signature)
                                        Michael G. Daniel
**73-1281091** _____            Vice President-General Counsel        2/19/09
(Federal Tax ID)                        (Print or Type Name and Title)          (Date)

                                        _____ (Seal)
                                        (Second Signature)
                                        Annabel M. Jones
                                        Secretary                              2/19/09
                                        (Print or Type Name and Title)          (Date)

ACKNOWLEDGEMENT
STATE OF   Oklahoma _____     County of   Tulsa _____

On this  19th  day of   February  ,  2009 , before me personally appeared   Michael G. Daniel _____, known or proven to me to be the   Vice President-General Counsel _____  of the entity executing the foregoing instrument ("Entity") and   Annabel M. Jones _____, known or proven to me to be the   Secretary _____ of the Entity, and they acknowledged said instrument to be the free and voluntary act and deed of said Entity, for the uses and purposes therein mentioned and on oath stated that the seal affixed is the seal of said Entity and that it was affixed and that they signed said instrument by authority of the Entity. IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written.

_____
Notary Public residing at _Tulsa County, Oklahoma_
(Commission expires _3-12-2012_ )

Notary Public
State of Oklahoma
LINDA PASCHALL
TULSA COUNTY
COMMISSION #00083582
Comm. Exp. 03-12-2012

S-2412A-P (04-04c)

Samson Lone Star, LLC successor via merger
to Samson Lone Star Limited Partnership

(Indemnitor Name)

73-1498972

(Federal Tax ID)

_(signature)_                                                  (Seal)
(First Signature)
D.J. Ponville
Executive Vice President                        2/19/09
(Print or Type Name and Title)                  (Date)

_(signature)_                                                  (Seal)
(Second Signature)
Annabel M. Jones
Secretary                                       2/19/09
(Print or Type Name and Title)                  (Date)

ACKNOWLEDGEMENT
STATE OF    Oklahoma            County of    Tulsa

On this   19th day of   February   ,  2009, before me personally appeared   D.J. Ponville   , known or proven to
me to be the   Executive Vice President   of the entity executing the foregoing instrument ("Entity") and
  Annabel M. Jones   , known or proven to me to be the   Secretary   of the Entity,
and they acknowledged said instrument to be the free and voluntary act and deed of said Entity, for the uses and purposes therein mentioned and on
oath stated that the seal affixed is the seal of said Entity and that it was affixed and that they executed said instrument by authority of the Entity. IN
WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written.

_Linda Paschall_
Notary Public residing at _Tulsa County, Oklahoma_
(Commission expires _3-12-2012_ )

Notary Public
State of Oklahoma
LINDA PASCHALL
TULSA COUNTY
COMMISSION #00003562
Comm. Exp. 03-12-2012

S-2412A-P (04-04c)